IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DIVERSICARE LEASING CORPORATION
d/b/a ARBOR OAKS HEALTHCARE AND
REHABILITATION CENTER                                                PLAINTIFF

VS.                                        CASE NO. 6:12-cv-6055

MARY L. COOPER, AS SPECIAL
ADMINISTRATOR OF THE ESTATE OF
ROYCE ALBERT TAYLOR, DECEASED,
AND ON BEHALF OF THE WRONGFUL
DEATH BENEFICIARIES OF ROYCE ALBERT TAYLOR                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff Diversicare Leasing Corporation d/b/a Arbor Oaks Healthcare and Rehabilitation Center filed a Complaint to Compel Arbitration seeking to enjoin an action filed by Defendant Mary Cooper in the Circuit Court of Hot Springs County.  (ECF No. 1).  This matter is now before the Court on the parties' cross motions for summary judgment.  (ECF Nos. 7 & 10).  Both parties have filed responses (ECF Nos. 13 &15), and both parties have filed replies.  (ECF Nos. 17-18).  The Court finds this matter ripe for consideration.

## BACKGROUND

Royce Albert Taylor was a resident of the Arbor Oaks Healthcare and Rehabilitation Center ("Arbor Oaks") from September 16, 2005 to December 22, 2007.  Upon his admission to the facility, Royce Taylor's sister, Mary Cooper, signed an admission agreement which included an addendum agreement to arbitrate.  (ECF No. 1, Exh 3).  The introductory paragraph of the admission agreement provides as follows:

> Royce Taylor shall be referred to in this Agreement as the Resident,
> excepting items that clearly refer to the Resident and/or anyone with legal

1

authority to make decisions for the Resident (e.g. – Health care P.O.A., Guardian, Conservator, Surrogate decision maker, etc.).

On the signature page of the Admission Agreement there are two independent sections for acceptance of terms.  The first section is to be signed by the resident only when the resident is accepting the terms on their own behalf.  This section was not signed by Royce Taylor.  The second section is to be signed in the event that the resident is not signing and an authorized party or representative is signing on resident's behalf.  This section was signed by Mary Cooper and states:

> I hereby acknowledge that I have read this page, the preceding pages, or have had them explained to me, and understand the terms and conditions thereof.  My signature below designates my acceptance of the terms and conditions of this admissions agreement on behalf of the resident; and certifies that I am legally authorized to execute these documents on his/her behalf.

The Arbitration Agreement in this case was attached to the above-referenced Admissions Agreement as an addendum and was incorporated into the Admissions Agreement by reference. The Arbitration Agreement provides that all claims in excess of $15,000.00, exclusive of interest, costs, and attorney's fees, are to be resolved exclusively by arbitration.  The Agreement further states that arbitration "shall be conducted in accordance with the provisions of the Federal Arbitration Act…."    The signature line on the Arbitration Agreement reads "Resident/Representative Signature" and is signed by Mary Cooper.  Despite Mary Cooper's signature at the end of the document, Royce Taylor's name was written in the Arbitration Agreement's introductory paragraph containing a blank space for "Resident" or "Resident's Authorized Representative."

While Mary Cooper took on the responsibility of signing the paperwork for Royce Taylor's admission to Arbor Oaks, it is undisputed that she did not have his power of attorney at

the time.  While there is some conflicting evidence regarding Royce Taylor's mental state at the time of admission, it is undisputed that he had not been declared mentally incompetent prior to his admission to Arbor Oaks.

Royce Taylor passed away on December 22, 2007 at the Arbor Oaks facility.   On December 8, 2011, Mary Cooper, as Special Administrator for Royce Taylor's estate and beneficiaries, filed a Complaint in the Circuit Court of Hot Springs County against Arbor Oaks alleging violations of the Arkansas Long Term Care Resident's Rights Statute.  (ECF No. 1, Exh. 1).  On April 18, 2012, Arbor Oaks filed a Complaint to Compel Arbitration with this Court seeking to enjoin the action filed by Cooper in the Circuit Court of Hot Springs County.  (ECF. No. 1).  It is undisputed that Cooper's state court claims, and the damages requested, fall within the types of claims covered by the Arbitration Agreement she signed.  The issue contested by the parties is whether the Arbitration Agreement can be enforced against Mr. Taylor's estate.

<u>STANDARD OF REVIEW</u>

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus.*

3

*Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 256.

<u>DISCUSSION</u>

Arbor Oaks maintains that the Admission Agreement and Arbitration Agreement signed by Mary Cooper bind Royce Taylor's estate to arbitration.  Accordingly, Arbor Oaks asks the Court to compel arbitration and enjoin the state court action.  Mary Cooper maintains that the Arbitration Agreement is unenforceable for a number of reasons.  First, she argues that she lacked authority to bind Royce Taylor to the arbitration agreement, thereby rendering it invalid. Second, she argues that the Arbitration Agreement is unconscionable because it lacks mutuality of obligation.  Third, Cooper maintains that Arbor Oaks has waived its right to enforce the Arbitration Agreement by failing to timely pursue its enforcement.[1]

---

[1] Because the Court finds, as discussed below, that the arbitration agreement is unenforceable on the grounds that Ms. Cooper lacked authority to bind Mr. Taylor to the arbitration agreement, it is not necessary for the Court to address Cooper's alternative arguments of waiver and unconscionability.

The parties concede, and the Arbitration Agreement itself clearly states, that this dispute is governed by the Federal Arbitration Act ("FAA").  The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms.  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758 (2010).  The FAA provides, in relevant part, that "[a] written provision in any…contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Given this FAA mandate, the Court must apply a two-part test to determine: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement."  *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007) (quoting *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004)).   These two determinations are guided by a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

There is no dispute that Mary Cooper's state court claims fall within the terms of the Arbitration Agreement in this case.  Therefore, the primary issue before the Court is whether the Arbitration Agreement is valid.  Whether an arbitration agreement is valid is a matter of state contract law.  *Faber*, 367 F.3d at 1052.  Arbitration agreements are examined in the same way as other contractual agreements, and the same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general.  *See Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501 (8th Cir. 1999); *Alltel Corp. v. Summer*, 360 Ark. 573, 576, 203 S.W.3d 77, 79 (2005).

Arbor Oaks contends that Mr. Taylor's estate is bound by the Arbitration Agreement under three distinct theories:  1) agency theory; 2) third party beneficiary theory; and 3) equitable estoppel.

### I.  Mary Cooper's authority to bind Royce Taylor to arbitration

Mary Cooper argues that the Arbitration Agreement is invalid because she had no authority to bind Royce Taylor or his estate to arbitration at the time of his admission to Arbor Oaks.  Arbor Oaks responds by arguing that Mary Cooper had both actual and/or apparent authority to contract on behalf of Royce Taylor.

While Arbor Oaks generally claims that Mary Cooper had actual authority to bind Royce Taylor to arbitration, it offers no proof or legal authority for that proposition.  Mary Cooper did not have Royce Taylor's power of attorney, and she had not been appointed his legal guardian. Arbor Oaks fails to point to any evidence that Royce Taylor expressly authorized Mary Cooper to contract on his behalf.  *See Evans v. White*, 284 Ark. 376, 378 (Ark. 1985).  Accordingly, the Court finds that Mary Cooper did not possess actual authority to bind Royce Taylor.  The more relevant question in this case is whether Mary Cooper possessed apparent authority.

A principal may be bound by the acts of agents who possess apparent authority, rather than actual authority.  *Telecommunications, Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 239 (Ark. 2000).  Apparent authority of an agent is defined as:

> such authority as the principal knowingly permits the agent to assume, or that he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority that he has; or such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.

*Id.* (citing *General Motors Acc. Corp. v. Salter*, 172 Ark. 691, 290 S.W. 584 (Ark. 1927)).  In determining whether apparent authority exists, the proper focus is upon the principal's conduct

and whether the principal's actions signal that the agent is authorized to act on the principal's behalf. *B. J. McAdams, Inc. v. Best Refrigerated Exp., Inc*., 265 Ark. 519, 526 (Ark. 1979). Conversely, "neither agency nor the scope of agency can be established by declarations or actions of the purported *agent*." *Id*. (emphasis added).

Arbor Oaks argues that "the entirety of Ms. Cooper's actions in admitting Mr. Taylor to the facility indicated that she had authority to act on his behalf and make decisions for him…" (ECF No. 13). Arbor Oaks goes on to offer the following as evidence of Mary Cooper's apparent authority: (1) Cooper signing the Admission Agreement and Arbitration Agreement; (2) Cooper signing a "Do Not Resuscitate" directive on Taylor's behalf; (3) Cooper signing a declaration of living will on Taylor's behalf; and (4) Taylor's mental incapacity and inability to represent himself at the time of his admission.

The most glaring problem with Arbor Oak's evidence of apparent authority is that it focuses so heavily on the actions of Mary Cooper, the alleged agent, rather than the actions of Royce Taylor, the principal. It appears that Arbor Oaks relied entirely on Mary Cooper's representations when it allowed her to go through the admissions process with little to no involvement from Royce Taylor. Arbor Oaks offers no evidence of any actions or representations by Royce Taylor that would lead them to presume that Mary Cooper had authority to contract on his behalf. Moreover, while Arbor Oaks points to Royce Taylor's alleged incompetence as support for Cooper's apparent authority, his alleged incompetence actually undermines their argument. Any mental incapacitation at the time of admission would have prevented Royce Taylor from competently representing to Arbor Oaks officials that Cooper had authority to act on his behalf.

For the reasons above, the Court finds that Arbor Oaks' reliance on Mary Cooper's representations and Royce Taylor's alleged incompetence was unreasonable. Given the lack of representations from Royce Taylor, the only reasonable inference is that Mary Cooper lacked apparent authority to bind him to any agreement. *Evans v. White*, 284 Ark. 376, 378, 682 S.W.2d 733, 734 (Ark. 1985) (holding that agency becomes a question of law when the "facts are undisputed and only one inference can reasonably be drawn from them….").

**II.  Royce Taylor as a third party beneficiary**

In the alternative, Arbor Oaks argues that Royce Taylor's estate is bound to arbitration because Taylor was a third-party beneficiary to the Arbitration Agreement.  Arbor Oaks maintains that, even if Mary Cooper had no apparent authority and was not acting as an agent for Royce Taylor, she formed a contract between *herself* and Arbor Oaks—a contract made exclusively for the benefit of Royce Taylor.  Mary Cooper argues that there is nothing in the Admission Agreement or Arbitration Agreement that suggests that she was entering a contract on her own behalf.  Cooper states that the agreements only reflect an attempt to act as an agent on behalf of Royce Taylor, thereby precluding Taylor's status as a third-party beneficiary to the contract.

"'A contract is actionable by a third party when there is substantial evidence of a clear intention to benefit that third party.'" *Simmons Foods, Inc. v. H. Mahmood J. Al-Bunnia & Sons Co.*, 634 F.3d 466, 469 (8th Cir. 2011) (quoting *Perry v. Baptist Health*, 358 Ark. 238 (Ark. 2004)).  By definition, third party beneficiaries are strangers to a contract.  *See Cooper v. Sparrow*, 222 Ark. 385, 389 (1953).  Accordingly, Royce Taylor can only attain third party beneficiary status if: he was not a party to the contract; there is a valid contract between Arbor Oaks and Mary Cooper in her individual capacity; and the contract between Mary Cooper and

Arbor Oaks was made for Taylor's benefit.  If these elements are shown, Royce Taylor's estate may be bound to arbitration.

In this case, Royce Taylor was not a "stranger" to the Admission Agreement or the Arbitration Agreement.  Rather, the agreement contemplated him as a party. It appears that Mary Cooper signed the agreements solely on his behalf in an attempt to act as his agent and bind him to the agreement.  As discussed above, she was not authorized to do so.

Taylor's status as an intended party to the contract is best illustrated by focusing on the specific language used in the agreement.  The Admission Agreement, which incorporates the Arbitration Agreement by reference, only provides for two signatory scenarios:  (1) a resident signing on his own behalf or (2) a legally authorized representative signing on behalf of the resident.  Royce Cooper did not sign for himself upon admission; rather, it was the second signature block that was signed by Mary Cooper.  The language preceding the second signature line clearly states that the representative is accepting the terms and conditions of the agreement "on behalf of the resident."  Most importantly, it goes on to state that the representative "certifies that [she is] *legally authorized* to execute these documents on [the resident's] behalf." (emphasis added).  Furthermore, on the addendum Arbitration Agreement, Royce Taylor's name was listed as a party to the agreement with Mary Cooper's signing as his "authorized representative."

The language above, particularly the "on behalf of" phrasing, suggests that Mary Cooper was only attempting to act as an agent for Royce Taylor and not as party in her individual capacity.  The language employed seems to be designed to work around any third party beneficiary scenario by explicitly stating that any representative who signs on behalf of the resident must be *legally authorized* to do so.  Given this language, the Court finds that the intent

9

of the agreement was to bind the resident, Royce Taylor, as a party to the contract and not to bind Mary Cooper in her individual capacity.

Because Royce Taylor was the intended party to the contract, he obviously cannot be considered a stranger to the agreement.  As discussed previously, Mary Cooper's attempts to directly bind Royce Taylor to the contract were unavailing due to her lack of authority.  Because she lacked authority to bind Royce Taylor, and because she did not bind herself in her individual capacity, an agreement to arbitrate was never created.[2]

### III.  Equitable Estoppel

Arbor Oaks argues that, even if Royce Taylor was not a third party beneficiary to the agreement, the doctrine of equitable estoppel precludes his estate from evading arbitration. Arbor Oaks' position is premised on the "basic principle" of equity that a party may not "insist upon the benefits of a contract without at the same time assuming its burdens."  *Ray v. Pearce*, 264 Ark. 264, 266 (Ark. 1978).

The Court has already held that there was no valid agreement between Royce Taylor and Arbor Oaks or Mary Cooper and Arbor Oaks.   Accordingly, because Royce Taylor never

---

[2] Arbor Oaks relies heavily on *Northport Health Services of Arkansas, LLC v. Rutherford*, a similar nursing home case from within this district, for the proposition that Royce Taylor is a third party beneficiary.  Case No. 5:07-5184 (W.D. Ark. March 17, 2009).  (ECF No. 1, Exh. 4).  In *Rutherford*, Judge Jimm Larry Hendren held that an arbitration agreement should be enforced despite the fact that the resident's family member had no actual or apparent authority to bind the resident to arbitration.  Judge Hendren found that the family member was a party to the agreement in her individual capacity and that the resident was bound as a third party beneficiary of the agreement.

It should be noted, however, that the written agreement in *Rutherford* is distinguishable from the written agreement in this case.  The agreement in *Rutherford* provided for the separate signature of a "responsible party" in addition to the signature of the nursing home resident.  A "responsible party" was defined as an "individual or family member who agrees to assist the Facility in providing for your health, care, and maintenance."  Due to this separate signature requirement and the definition of "responsible party," Judge Hendren held that the agreement indicated the family member's intention to be bound by the agreement in her individual capacity.  The language that Judge Hendren relied upon in *Rutherford* is simply not present here.  The agreement in this case only contemplates a signature "on behalf of" the resident by a person who is a "legally authorized" agent of the resident.

obligated himself by consenting to receive contractual benefits or assume contractual burdens, this doctrine of equitable estoppel cannot compel his estate to arbitration.  *See Northport Health Services of Arkansas, LLC v. Rutherford*, Case No. 5:07-5184 (W.D. Ark. March 17, 2009) ([S]ince no other individual had legal authority to act for [the resident] and thereby either ratify the Admission Agreement or waive [the resident's] legal rights, the argued legal theories could not apply to [the resident].")

<u>CONCLUSION</u>

For the reasons stated above, the Court finds that the Arbitration Agreement in this case is unenforceable.  Accordingly, Plaintiff Arbor Oaks' Motion for Summary Judgment (ECF No. 7) should be and hereby is **DENIED**.  Defendant Mary Cooper's Motion for Summary Judgment (ECF No. 10) should be and hereby is **GRANTED**.  Plaintiff's Complaint to Compel Arbitration is hereby **DISMISSED WITH PREJUDICE**.  A Judgment of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 26th day of April, 2013.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge